IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 15, 2003

## LETIVIAS D. PRINCE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. 801-260      Timothy L. Easter, Judge**

_____

**No. M2003-00166-CCA-R3-PC - Filed January 27, 2004**

_____

Petitioner, Letivias D. Prince, filed a petition for post-conviction relief, which was subsequently amended. Following an evidentiary hearing, the trial court dismissed Petitioner's petition. On appeal, Petitioner argues the trial court erred in dismissing his petition for post-conviction relief and contends (1) that his counsel failed to develop a reasonable trial strategy or defenses for Petitioner; (2) that his counsel failed to fully investigate or adequately prepare the witnesses for trial; (3) that his counsel failed to allow Petitioner to testify at trial; and (4) that his counsel failed to ask for a continuance to investigate certain exculpatory evidence presented by the State at the time of trial. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

J. Britt Phillips, Franklin, Tennessee, for the appellant, Letivias D. Prince.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Lee E. Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Background

Following a jury trial, Petitioner was convicted of first degree murder and was sentenced to life imprisonment. The facts surrounding Petitioner's conviction were summarized by this Court in the direct appeal in *State v. Letivias Prince*, No. M1998-00005-CCA-R3-CD, 2000 WL 1133572 (Tenn. Crim. App., Nashville, Aug. 10, 2000), *perm. to appeal denied* (Tenn. 2001) as follows:

At approximately 10:30 P.M. on March 8, 1997, Joel Dickerson, directed by the victim, Ricky Fly, drove to an area of Franklin to purchase crack cocaine. After circling the block several times, they stopped at a street corner to ask a "large black man" for a "twenty." When the man responded that there was "nothing going on," they drove away. As they approached the intersection of Glass and Eleventh, Dickerson heard between four and six successive gunshots which seemed to be coming from some bushes behind his truck. Fly was struck in the back of the head by a bullet which came through the rear window. Dickerson drove to a nearby gas station and called 911. Neither Dickerson nor the victim were armed. Dickerson did have a small pocket knife stored in his glove compartment.

Police immediately identified the defendant as a suspect. Several hours later, he was found hiding in a vehicle. The defendant initially denied any involvement in the shooting, but later took officers to the crime scene and admitted that he had fired at the truck.

When interviewed by the police, the defendant stated that two white men in a truck had driven through the area asking for crack cocaine. The defendant stated that he and his companions had informed the men that they did not sell drugs. He claimed that the two men threatened to shoot them and then drove away. He contended that the two men came around the block again and appeared to be throwing bottles from the truck. The defendant told police that he shot at the truck in order to frighten the men. He claimed that after he fired the shots, he took the weapon to his home and hid it under a mattress. The police recovered a Lorcin .380 semiautomatic pistol from the defendant's step-grandfather at the defendant's residence.

At the trial, Marcus Cannon, who was standing at the corner of Glass Street and Ninth Avenue, testified that the men in the truck also asked him to sell them some drugs. He claimed that when he informed them that he had none, they threatened to kill someone. Cannon contended that he warned the defendant and his friends about the two men. Defense witnesses claimed that the two men in the truck turned off the lights as if to do a "drive by shooting" on their third trip around the block.

Dickerson's truck contained four different bullet holes. Two bullets were imbedded in the truck, one in the passenger door, and another in the left rear wheel well. One bullet and seven lead bullet jackets were recovered from the scene of the shooting. The state's expert testimony established that all three bullets and four of the seven shells had been fired from the Lorcin .380 pistol. The other three shells were very close to a match. Other than Dickerson's small pocket knife located in the glove compartment, there were no weapons in the truck.

*Prince*, 2000 WL 1133572, *1-2.

On appeal, this Court found that the evidence was sufficient to support Petitioner's conviction for first degree murder. *Id*. at \*10.

## II. Post-Conviction Hearing

In his *pro se* post-conviction petition, as amended by his counsel, Petitioner argued that his counsel rendered ineffective assistance at trial. Specifically, Petitioner contends that his counsel failed to develop a reasonable trial strategy or defense, failed to adequately prepare Petitioner's witnesses for trial or investigate the substance of their testimony, failed to allow Petitioner to testify at trial, and failed to request a continuance when provided with exculpatory evidence by the State during the trial.

At the post-conviction hearing, Petitioner's counsel at trial, Mark Scruggs, testified that he had twenty years of legal experience and had handled twenty to twenty-five criminal trials. Since 1988, Mr. Scruggs' practice has focused primarily on criminal matters.

Mr. Scruggs said that he first represented Petitioner in 1996 on some unrelated charges. Mr. Scruggs agreed to represent Petitioner on the current charges in the spring of 1997. Mr. Scruggs hired Charles Scott, an investigator, to assist him in the preparation for trial and began investigating the matter immediately. Petitioner's mother introduced Mr. Scruggs to the potential witnesses, and either he or Mr. Scott interviewed all of the witnesses prior to trial.

Petitioner's family was very involved in the development of Petitioner's case. They believed Petitioner should be charged with no more than the offense of manslaughter. The State offered to reduce the charge against Petitioner to second degree murder during plea negotiations, but after discussions with Petitioner and his family members, the offer was rejected by Petitioner. Mr. Scruggs did not view the case as one of premeditation. His decision to put on a defense at the close of the State's proof was based on the family's desire to avoid a conviction of second degree murder.

Mr. Scruggs presented alternative theories of defense as part of his trial strategy. Mr. Scruggs first argued that Petitioner was not the one who fired the bullet that killed the victim. Although the State recovered a slug from the scene which matched the caliber of Petitioner's gun, there was no DNA evidence to tie the slug to the victim's injuries. Testimony placed Marcus Cannon in the vicinity of the shooting with a gun, and one of the witnesses heard a shot fired from Mr. Cannon's direction.

Alternatively, if the jury believed that Petitioner fired the bullet that killed the victim, then there was some evidence supporting an argument that Petitioner acted in self-defense. The primary evidence supporting this defense was Petitioner's statement to the police in which he admitted that he hid behind a tree and fired his gun in the air as the truck drove by. Mr. Scruggs admitted that an argument based on self-defense was arguably weak. However, Mr. Scruggs felt that Petitioner's statement did not indicate that Petitioner had lain in wait for the truck to return. There was testimony that Mr. Dickerson and Mr. Fly threw things out of the truck's windows as they circled the block.

Mr. Scruggs wanted to show how chaotic and tense the situation was that night, and the fact that no two witnesses described the sequence of events in the same way helped create that picture. The ultimate goal of presenting alternative theories of defense was to provide the jury with sufficient justification to convict on a lesser-included offense.

Mr. Scruggs said that either he or Mr. Scott interviewed all of the defense's witnesses prior to trial and felt that the testimony was favorable to Petitioner. Their testimony supported a theory that the shooting occurred spontaneously during a tense encounter and that perhaps Petitioner had simply panicked that night. None of the witnesses gave Mr. Scruggs an impression that the shooting was premeditated or that Petitioner had lain in wait for the truck as it circled the block.

The erosion of Petitioner's self-defense theory occurred during the cross-examination of Timothy Prince, Petitioner's first cousin, who was called as a witness for the defense. Mr. Prince testified that he and Petitioner hid when the truck circled the block the second and third times. Although he ran away to a neighboring house, Mr. Prince saw Petitioner hide in some bushes when the truck passed. He said that Petitioner stepped out of the bushes when the truck returned and fired his gun directly at the truck. Mr. Scruggs said that none of the witnesses, including Mr. Prince, told him that Petitioner hid and then fired directly at the truck. On cross-examination, Mr. Scruggs said that he would not have called Mr. Prince as a witness if he had known that Mr. Prince would say at trial that Petitioner had hidden prior to shooting at the truck.

Mr. Scruggs said that he only spoke briefly with Petitioner about whether or not he would testify at trial. The decision was not made until the trial, and Mr. Scruggs said he just leaned over and told Petitioner he did not think he should testify. Petitioner agreed with Mr. Scruggs' recommendation. Mr. Scruggs explained that he did not feel that Petitioner could elaborate any further on the details contained in his statement, and the statement at least was not subject to cross-examination. In retrospect, Mr. Scruggs said that he wished Petitioner had testified, primarily so that Petitioner could establish a rapport with the jury. He admitted, however, that Petitioner's prior drug convictions would probably be disclosed during cross-examination and that Petitioner would not be an articulate witness.

Joel Dickerson was the driver of the truck. At the conclusion of his testimony at trial, the State provided Mr. Scruggs with a copy of Mr. Dickerson's prior statement to the police as Jencks material. In his trial testimony, Mr. Dickerson said that the shooting occurred shortly before he reached the stop sign at the intersection of Eleventh and Glass. In his prior statement, however, Mr. Dickerson said that the shooting occurred further down the road at the corner of Ninth and Glass. In addition, Mr. Dickerson's description of the shooter varied between that given in his trial testimony and the description previously provided the police. Mr. Scruggs said that he probably should have requested a continuance because Mr. Dickerson's statement supported Petitioner's theory that Mr. Cannon was the shooter. All the other witnesses, however, testified that the shooting occurred at Eleventh Street, and the shell casings were found at that intersection.

Judge Donald P. Harris, a judge with the Williamson County circuit court, presided over Petitioner's trial and was called to testify at the post-conviction hearing. Judge Harris recalled that he thought the evidence supporting premeditation was not very strong when the State rested its case. He recollected that the driver of the truck had testified that he had driven by the scene of the shooting once and that six or seven shots were fired. There was no evidence showing any contact between Petitioner and the victim. Judge Harris, however, denied Petitioner's motion for a judgment of acquittal because the evidence showed that numerous shots had been fired in quick succession. Judge Harris, however, observed that he was not sure if he could approve a verdict of first degree murder in his capacity as thirteenth juror based on the evidence presented at the close of the State's proof.

After the defense's witnesses had testified, however, Judge Harris viewed the State's case of first degree murder as much stronger. He recalled that one of the defense witnesses said that the truck circled the block several times, that Petitioner hid behind a tree, and that Petitioner then stepped out and began shooting. Judge Harris said that he did not remember the issues concerning Mr. Dickerson's prior statement and could not say whether or not he would have granted a continuance had Mr. Scruggs requested one. Judge Harris said that he never felt that Mr. Scruggs' representation of Petitioner during the trial was anything less than competent.

A number of the defense's witnesses at trial testified at the post-conviction hearing. Dwight Wall, Allen Prince and Tanya Andrews testified that they could not remember if they talked with either Mr. Scruggs or Mr. Scott prior to trial. Shalandra Fitzgerald and Kizzy Wall said that they talked to Mr. Scruggs and Mr. Scott prior to trial but were not adequately prepared to testify. On cross-examination, both witnesses however, said that they would not have testified any differently had their discussions with Mr. Scruggs been more lengthy.

Timothy Prince testified that he told Mr. Scott about Petitioner hiding in the bushes prior to trial. He also told Mr. Scott that Mr. Cannon yelled at him to warn him that the men in the truck were coming back, and that Mr. Cannon was standing "five to ten miles" down the road when he called out his warning. Mr. Prince said that no one told him what questions would be asked prior to the trial.

At the post-conviction hearing, Petitioner said that he did not testify at trial because Mr. Scruggs said that it would not be "good" if he did. He said that Mr. Scruggs made the decision. After the witnesses for the defense testified, Petitioner said that he wanted to testify but did not bring up the subject because Mr. Scruggs had already told him he was not going to testify. Petitioner relied on Mr. Scruggs' advice. On cross-examination, Petitioner said that he did not tell Mr. Scruggs that he wanted to testify.

Joe Baugh, an attorney in Franklin, who was district attorney general at the time of Petitioner's trial and handled the prosecution of the matter, testified at the post-conviction hearing. Mr. Baugh said that he recalled that the discrepancies between Mr. Dickerson's trial testimony and

his statement to the police were not, in his opinion, significant.  He said that he did not know why the State waited until the trial to provide the defense with a copy of Mr. Dickerson's statement.

John Berringer, a member of the State's prosecution team, said that the State decided to let the defense call the witnesses who testified on Petitioner's behalf so that they would have the opportunity to ask leading questions during cross-examination.

At the conclusion of the post-conviction hearing, the trial court denied Petitioner's petition for post-conviction relief.  The trial court found that Mr. Scruggs' strategy based on self-defense was entirely reasonable based on the evidence discovered prior to trial and Petitioner's own statement.  The evidence also supported an alternative shooter theory.  Petitioner failed to present any other strategy that would have led to a more favorable result. The trial court accredited Mr. Scruggs' testimony that he interviewed all of the witnesses, including Timothy Prince, prior to trial.  Further, the witnesses failed to demonstrate any prejudice from a lack of preparation.  The fact that Mr. Prince's testimony proved to be damaging at trial did not by itself support a finding that Mr. Scruggs was ineffective.  The trial court found that Petitioner also failed to demonstrate that his counsel's assistance was ineffective concerning Petitioner's right to testify at trial.  Specifically, the trial court found that Mr. Scruggs consulted with Petitioner about this decision before the trial, and that Petitioner accepted Mr. Scruggs' recommendation that he not testify.  Based on the video transcript of the trial, the trial court found that Petitioner failed to prove that the results of his trial would have been different had Mr. Scruggs asked for a continuance when he received a copy of Mr. Dickerson's prior inconsistent statement.  Furthermore, the trial court found that "[Mr.] Scruggs skillfully used the statement in an effective cross-examination of [Mr.] Dickerson.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence.  Tenn. Code Ann. § 40-30-210(f) (1997).  The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict.  *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Therefore, this Court  may not re-weigh or re-evaluate these findings nor substitute its inferences for those of the trial judge unless the evidence in the record preponderates against those findings.  *State v. Honeycutt*, 54 S.W.3d 762, 763 (Tenn. 2001);  *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).  In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the trial court, and not this Court.  *Id*.  However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review.  *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases."  *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  In addition, he must show that counsel's ineffective performance actually adversely impacted his

defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Trial Strategy and Preparation of Witnesses

Petitioner argues that Mr. Scruggs provided ineffective assistance of counsel in the development of a reasonable trial strategy and the preparation of Petitioner's witnesses for trial. The crux of Petitioner's argument revolves around the damaging testimony elicited from Timothy Prince during the State's cross-examination. Judge Harris testified that he felt the State's proof as to premeditation was weak and he did not know if he could have approved a verdict of first degree murder in his capacity as thirteenth juror. After the testimony of the defense witnesses, however, Judge Harris felt the State's case supporting a verdict of first degree murder was much stronger. Petitioner argues that Mr. Scruggs' decision to pursue a trial strategy based on self-defense resulted from inadequate preparation. Mr. Prince testified that he told Mr. Scott that Petitioner hid behind some bushes and then shot directly at Mr. Dickerson's truck prior to trial. Petitioner argues that since Mr. Prince said that Mr. Cannon was five to ten miles away when he warned Petitioner and Mr. Prince that the truck was returning shows that Mr. Scruggs did not adequately prepare Mr. Prince to testify at trial.

The fact that the testimony of a witness at trial proves less than helpful to the defense does not necessarily lead to the conclusion that a defendant's counsel was ineffective either in investigating, preparing or calling the witness. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, we must "evaluate the conduct from counsel's perspective at the time" in light of all of the circumstances faced by counsel at the time the decision was made. *Id.*, 466 U.S. at 688, 104 S. Ct. at 2065.

Counsel has the duty to make reasonable investigations into the case and to raise all available defenses in a timely manner. *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999), (quoting *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2052; *Baxter*, 523 S.W.2d at 932-33). Although counsel's decisions are entitled to a heavy measure of deference, uninformed choices based on inadequate preparation may constitute ineffective assistance. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982) (quoting *United States v. DeCoster*, 487 F.2d 1197, 1201 (D. C. Cir. 1973)).

Mr. Scruggs testified that he began investigating Petitioner's case as soon as he was retained. Either he or Mr. Scott, or both, interviewed all of the witnesses. Petitioner's mother assisted in gathering the witnesses together and making them available to Mr. Scruggs and his investigator. These interviews did not indicate any unfavorable testimony to Petitioner's case. Mr. Scruggs testified that if he had known Mr. Prince was going to testify as he did, he would not have called Mr. Prince as a witness.

There is no doubt that Mr. Prince's testimony at trial was damaging. The trial court, however, found that Mr. Scruggs interviewed all of the witnesses prior to trial and adequately prepared for trial. In so doing, the trial court specifically accredited Mr. Scruggs' testimony that Mr. Prince did not tell him prior to trial that Petitioner was "hiding in the bushes." The trial court had the opportunity to view the demeanor of both Mr. Scruggs and Mr. Prince at the post-conviction hearing. Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the post-conviction court, not this Court. *Burns*, 6 S.W.3d at 461.

The trial court further found that Mr. Scruggs presented reasonable alternative theories of defense based on the information gathered from the witnesses and Petitioner's statement to the police. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own actions or statements." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. The fact that even Mr. Scruggs, in hindsight, regrets putting on a defense at the close of the State's proof does not render his decision ill advised when viewed under the circumstances present at the time of trial. *See Hellard.* 629 S.W.2d at 9-10.

Based on a thorough review of the record, we find that the evidence does not preponderate against the trial court's finding that Mr. Scruggs' assistance during the preparation and course of Petitioner's trial was effective and within the range of competence demanded of attorneys in criminal cases. Petitioner is not entitled to relief on this issue.

## V. Right to Testify

Petitioner concedes that the procedures established in *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999) to safeguard a defendant's right to testify were not applicable in 1997 when Petitioner's trial occurred. Nonetheless, Petitioner argues that his right to testify is a fundamental right which may only be personally waived. *Id.* at 161. Petitioner contends that Mr. Scruggs unilaterally made the decision that Petitioner would not testify even though Petitioner wanted to testify after the damaging

testimony of the defense witnesses. Petitioner points out that he was eighteen years old at the time of the trial and relied solely on the advice of his counsel.

Mr. Scruggs testified that he did not have a lengthy discussion with Petitioner concerning whether or not Petitioner would testify. He said, however, that they did discuss the benefits and disadvantages attendant on Petitioner testifying. At the time, Mr. Scruggs felt that taking the stand would not be in Petitioner's best interest. Petitioner's statement was already in the record and not subject to cross-examination. In retrospect, Mr. Scruggs said that perhaps Petitioner should have testified if for no other reason than to personalize the situation. Mr. Scruggs conceded, however, that Petitioner had two prior drug convictions which would threaten any rapport he might establish with the jury. Mr. Scruggs also admitted that Petitioner was not very articulate.

The trial court accredited the testimony of Mr. Scruggs over that of Petitioner and found that the record showed that Mr. Scruggs recommended to Petitioner that he not testify at trial, and that Petitioner accepted that recommendation. Moreover, the trial court found that Petitioner had previously been explained about his right to testify in another criminal proceeding. The evidence does not preponderate against the trial court's implicit finding that Petitioner made an informed decision not to testify, and Petitioner is not entitled to relief on this issue.

## VI. Failure to ask for a Continuance

Following the conclusion of Mr. Dickerson's testimony, the State provided Mr. Scruggs with a copy of Mr. Dickerson's prior statement to the police which contained both a different description of the shooter and a different location for the shooting. Mr. Scruggs asked for a ten minute recess to review the statement and then cross-examined Mr. Dickerson at length concerning the discrepancies between his trial testimony and his statement to the police. Petitioner speculates that further investigation of Mr. Dickerson's earlier statement would have bolstered Petitioner's contention that another person fired the fatal shots.

The trial court found that Mr. Scruggs' cross-examination of Mr. Dickerson at trial as to the discrepancies between his statement and his trial testimony was both skillful and effective. Petitioner did not demonstrate at the post-conviction hearing that a continuance would have produced any different result or produced anything to benefit him. *See Best v. State*, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985). The evidence does not preponderate against the trial court's finding that Petitioner failed to prove that he was prejudiced by Mr. Scruggs' failure to ask for a continuance. Petitioner is not entitled to relief on this issue.

### CONCLUSION

After a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE